STATE *v.* S. K. JOURNEY.

[62 South. 354.]

1. EMBEZZLEMENT. *Indictment.* *Sufficiency.* *Code* 1906, *section* 1136. *Classes of persons.*

An indictment charging that defendant being the agent, servant and employee and bailee of a film company, did by virtue of a contract of lease, rent and hire, entered into with said film company, whereby defendant agreed to pay to said film company one dollar for each reel of films as rent, shipped to him, to be used by him not exceeding four days and to be then returned by him to said film company at its office and by means of this the defendant got possession of one reel of films belonging to said company of the value of seventy-five dollars and did wilfully, unlawfully, fraudulently and feloniously em-

bezzle, secrete and convert to his own use said reel of films, without the assent and consent of said film company and which had been intrusted to him by virtue of said contract of bailment as aforesaid and did then and there unlawfully, wilfully, fraudulently and feloniously take, steal and carry away said reel of films of the value of seventy-five dollars of the personal property of said film company, is not demurrable.

2. EMBEZZLEMENT.  *Code* 1906, *section* 1136.  *Classes of persons.*

The words "any trustee or factor, carrier or bailee" in section 1136, Code 1906, refers to trustees, factors, carriers or bailees of both artificial and natural persons.

APPEAL from the circuit court of Attala county.

HON. G. Q. MCLEAN, Judge.

S. K. Journey was indicted for embezzlement and from a judgment sustaining a demurrer to the indictment the state appeals.

The facts are fully stated in the opinion of the court.

*Frank Johnston,* assistant attorney-general, for the state.

So far as this general objection is concerned, it is not well taken. The general averments of the indictment are full and clear and explicit and being of this character, they were not subject to any general and comprehensive objection of insufficiency. The indictment apprises the defendant fully of the nature of the charge against him; it shows a trust relation between himself and the company by the bailment of this reel of films; it shows that he got possession of this propety by virtue of this contract; that he converted, *ipso facto,* this property to his own use falsely and feloniously. The date of the contract is given; the date of embezzlement is also stated in the declaration. So that, the demurrer to the indictment depends at last upon the soundness of the specific objections that are made to it.

It was not necessary to state in the indictment whether this contract was oral or in writing. That was wholly an

immaterial question so far as the offense charged in this indictment is concerned.

So far as no averment in the indictment in respect to a demand being made, none was necessary. Counsel who filed the demurrer has mistaken the character of this indictment which is, for an act of embezzlement, complete in itself and where no demand was necessary. The rule of law on this subject is very simple. There are cases of embezzlement, and a large class of such cases, where the crime is complete by the fact of the embezzlement. Where the party actually secretes, appropriates and embezzles the property, the crime itself is then complete and no demand is necesasry. This constitutes one class all to itself of embezzlement cases.

It is not necessary in the averment to charge what particular four days this defendant had within which to use these films. This was wholly immaterial. He unquestionably, according to the averments of the indictment, had a right to use the films for four days and no longer, but the four-day feature of the contract passes entirely out of consideration in view of the distinct and explicit averment and charge in the indictment that on the twenty-second day of February, 1912, the defendant fraudulently and feloniously embezzled, secreted and converted to his own use one reel of films, No. 3480, which he received on that day. The four-day stipulation in the contract becomes, therefore, a matter of no consequence in view of the fact that he had, in fact, secreted and embezzled and appropriated to his own use the said film. It is absolutely immaterial whether he did this within the four days or after the expiration of the four days. The crime was complete in itself when he, in fact, appropriated this film whether he did so on the day that he received it or did so four days after he received it.

The construction placed on section 1136 of the Code is a very narrow one, and I think, an unsound construction of the law. In the first clause of section 1136 it is made

embezzlement for any agent of an incorporated company to embezzle the property of the corporation. While a bailment is not technically an agency yet in a broad sense, a person occupying the position of this defendant is, in a sense, an agent of the corporation. Fairly construed, I submit that section 1136 is not susceptible of the interpretation that a bailee of an incorporated company cannot, under the terms of this section, commit the crime of embezzlement by an appropriation of the property of the incorporated company. There is no reason why the bailee of an incorporated company, or the lessee of an incorporated company in possession of the property of the company by virtue of his contract should not be held criminally responsible for an embezzlement of the property of the corporation. The construction that is sought to be placed upon this section is therefore too narrow and too circumscribed, and it rests upon no reason whatever, but I respectfully submit to the court that section 1139 of the Code, amply supplies the deficiency, if there is a deficiency, or a want of completeness, in section 1136.

There was always a question at common law, under the English statutes of embezzlement, as to whether the crime was within the precise terms of the statute or not. The original English statute began with a provision against embezzlement by the servant of a master's goods and was afterwards extended to other trust and fiduciary relations between parties. There was such nicety of distinctions and hairsplitting constructions of the English statutes and also of many of the American statutes, that the Mississippi law (this being purely a matter of statutory regulations) has simplified the whole subject by the broadest and most comprehensive terms in section 1139. This statute applies to private individuals and corporations indiscriminately; it provides that if a person shall fraudulently appropriate personal property or money which has been delivered to him on deposit, or to be carried or repaired, or on any other contract of trust, by

which he was bound to deliver or return the thing received, or its proceeds, he shall on conviction be punished for embezzlement.

It is seen at once, therefore, that in this case the indictment brings the averment clearly within the terms of section 1139, since the defendant did receive the property of this company which had been delivered to him on a contract of a trust by which he was bound to return the thing received, and which he did fraudulently appropriate to his own use.

The case comes, therefore, according to the averments of the indictment clearly within the express provisions of section 1139 of the Code. The whole purpose of this statute was comprehensive to embrace any case, not only of a bailment, but of any contract or any trust by which a person acquired the possession of property for which he was bound to account to the owner.

*R. H. & J. H. Thompson,* for appellee.

We trust that we will be pardoned for suggesting that the construction placed on the statute involved in this case by the opinion delivered on the twenty-third of June, 1913, bears all the indica of a broad and liberal, but none of a strict construction.

The statute itself, needlessly, if the court correctly construed it, separate incorporated companies from private persons. The court makes the statute read as if the legislature had used these words: "If any trustee, factor, carrier, bailee, clerk, agent, servant or officer of any person or corporation," when in truth it carefully enumerates trusted persons who may embezzle from a corporation and separately enumerates those who may embezzle the property of a private person. Why separate enumeration, if they are to be combined? What the legislature should have done is not the question. While your honors are on the bench, all will be well, but no more dangerous doctrine can be conceived that the

one, apparently receiving public sanction, recognizing the power of the courts to remedy legislative failures and blunders.

The enumerations of the statutes are as follows:.

Those who may embezzle from incorporated companies are director, agent, clerk, servant and officer.

Those who may embezzle from private persons are trustee, factor, carrier, bailee, clerk, agent and servant.

Clerk, agent and servant are enumerated in each case. Director and officer are enumerated as trusted persons who may embezzle from an incorporated company, but are omitted from those who may embezzle from a private person. Trustee, factor, carrier and bailee are enumerated in defining who may embezzle from a private person, but are omitted in the enumeration of those who may embezzle from a corporation. The courts, we respectfully submit, have nothing to do with the inquiry as to why the law-making department of the government made the distinction. Let us suppose that John Brown was indicted as director of Henry A. Wise, a private person, for embezzling the funds of said Wise, would not the indictment be unsupported by the statute? It certainly would and for the reason only that the statute does not use the word director in enumerating those who may embezzle from a private person. Why does not the same reason apply when an indictment charges a trustee, factor, carrier or bailee of an incorporated company? Neither of said terms are used by the legislature in enumerating the persons who may embezzle the property of a corporation, and, so far as the courts are conerned, the result is the same whether the legislature acted upon reasons sufficient to satisfy the lawmakers, or merely failed to make the statute as broad as it should have been made.

We are unable to see what rule of construction authorized the court to consolidate the two clauses of the statute, and regret that the opinion fails to enlighten us

on this point. The true meaning of separate sections of a statute is frequently made manifest by combining them in one, and the meaning of a single section can some-- times be reached by separating its parts and reading it as if it had been enacted in two sections.

Lets separate the two clauses and consider them as if written in separate sections: So doing, we have: First: "If any director, agent, clerk, servant, or officer of any incorporated company shall embezzle . . . property which shall have come or been intrusted to his care or possession by virtue of his office, place or employment, he shall be guilty of embezzlement and shall be punished," etc.

Second: "If any trustee or factor, carrier or bailee, or any clerk, agent or servant of any private person shall embezzle . . . property which shall have come or been intrusted to his care or possession by virtue of his office, place or employment, he shall be guilty of embezzlement and shall be punished," etc.

Were the Code section under consideration separated as above into two sections would any court consolidate them and hold that "trustee," "factor," or "bailee" could be read into the one relating to incorporated compa- nies? We cannot think so, and yet there would be, we submit, just as much warrant for so doing as can be found in approved rules of construction for the conclu- sion announced in the opinion delivered in this case com- mingling the two separate clauses, one relating to em- bezzlement from incorporated companies and the othei to embezzlement from private persons, when written as they are in the Code section. While it may be true that sections and paragraphs were devised in composition for the purpose of indicating to the reader a separation of subject matters, yet we know full well several subjects are frequently embraced in the same section of our stat- utes, and that the purpose for which accomplished writ- ers use sections and paragraphs is frequently, if not gen-

erally, ignored in statutory composition. Several crimes are frequently defined in one and the same section of our Code.

The defendant was indicted as having received the property as the agent, servant, employee and bailee of the film company.

The indictment, however, shows on its face that the defendant received the goods under a contract of lease or hiring, and we repeat a hirer or lessee of property is' not the agent, or servant or employee of the owner or landlord from whom he hired or leased the property. The indictment, therefore, we again repeat, negatives the charge that the goods were received as the agent, servant or employee of the company and stands as the bailee of the company.

A hirer or lessee may become the bailee, but is not the servant, agent or employee of the person from whom he hires or leases. And since a bailee of a corporation is not within the embezzlement statute the indictment does not charge any offense whatever.

*Duncan H. Chamberlain,* for appellee.

The confusion that envelops the mind of the reader who essays to fathom the meaning of this indictment is not merely as to words but is also as to terminology. The indictment begins in uncertainty as to the exact relation of appellee to the General Film Company and essays to avoid this uncertainty by a blanket charge that appellee was on the second day of September, 1912, the "agent, servant, employee and bailee of the General Film Company," and then after pursuing appellee along the meanderings of a never-ending sentence, the indictment finally settles upon the term, bailment, the inference being that appellee bore the relation of bailee to the said General Film Company. As a matter of course the indictment is correspondingly uncertain with reference to an alleged contract which is described in the forepart of

this interminable sentence as ''a contract of lease, rent and hire,'' and several leagues further down this weary sentence, this same instrument is described as a ''con-- tract of bailment,'' which last description is adhered to thereafter, at least so far as we explored and penetrated this wilderness of words.

According to the books there is a sharp distinction between the terms servant, clerk, lessee, agent, bailee, etc., and this distinction is rigidly adhered to in the construction of penal statutes.

''The words most commonly employed are 'servants,' 'clerk,' and 'agent.' These terms overlie each other to some extent and are not specific and exclusive in their meaning. But there is nevertheless a marked distinction between 'servant' and 'agent,' as the terms are used in these statutes.'' 10 Am. & Eng. Ency., 997.

''Bailees, as a general rule, cannot be indicted for embezzlement as servants or agents, for they are not servants or agents within the statutes.'' 10 Am. & Eng. Ency., 1007; *Reed* v. *State,* 16 Tex. App. 586; *People* v. *Leipsic,* 62 Pa. 311.

''A bailee should be charged as such and not as an agent.'' *Hamuel* v. *State,* 5 Mo. 264. See, also, note on embezzlement, 98 Am. Dec. 126.

In Clark's Criminal Procedure, on page 182, appears a discussion with reference to unnecessary matter of description: ''Care must always be taken to distinguish between averments which are thus wholly foreign and immaterial, or which, though not wholly foreign, can be stricken out without destroying the accusation, and averments which, though they might have been omitted, enter into the description of the offense. If the averments may be rejected without injury to the pleading, it may be rejected; but it is otherwise with averments of essential circumstances stated with unnecessary particularity. No allegation, though it may have been unnecessary, can be rejected as surplusage, if it is descriptive of the identity

of that which is legally essential to the charge. The application of this rule may often seem to defeat the ends of justice, but, on the whole, the rule is a salutary one, and is too firmly established to be shaken or disregarded in particular cases.''

"And . . . it is said by STORY, J., that no allegation, whether it be more or less particular, which is descriptive of the identity of that which is legally essential to the charge in the indictment, can ever be rejected as surplusage.'' *U. S.* v. *Howard,* 3 Sumn. 14, Fed. Cas., No. 15403.

Ordinarily it is difficult indeed to trace the antecedents of illegitimates, but sometimes certain identities and similarities in form or features renders the task easy of consummation. But for this fact, we would despair of success in tracing the origin of this indicting sentence. A careful comparison of its conglomerated language with that of the statutes, reveals the fact that the indictment is founded on section 1136 of the Code of 1906, and no other statute. In the charging portion of the indictment, appears the following words: ''. . . did then and there on, to wit, the day and year above stated, unlawfully, wilfully, fraudulently, and feloniously embezzle, secrete and convert to his own use any goods, etc., he shall be guilty of embezzlement.''

The assistant attorney-general in his very able brief, adroitly attempts to make section 1139 do duty as a life preserver to the indictment. But in advancing his interpretation of this statute, the assistant attorney-general, in a new quotation intermingles, his own words with the words of the statute to such an extent that an erroneous conclusion may ensue unless attention is called thereto. On page seven says the brief: (This statute applies to private individuals and corporations indiscriminately.) It provides that if a person shall fraudulently appropriate personal property or money which has been delivered to him on deposit, or to be carried or repaired,

or on any other contract of trust by which he was bound to deliver or return the thing received, or its proceeds, shall on conviction be punished for embezzlement.

It is submitted that the word "embezzlement" does not occur in section 1139, nor does the words "secrete," "convert" and "embezzle," that are so freely made use of in the indictment, appear therein. It is thus made clear and manifest that the indictment was drafted under and in the words and terms of section 1136 and without regard to section 1139 so extolled and admired of the assistant attorney-general.

This being true, the indictment must stand or fall by the construction of the terms and provisions of section 1136, unless the doctrine is advanced that a conviction can be had under one section of the statutes on an indictment founded on another section. We are aware that the general holding is to the effect that this can be done; but we submit that where the two sections differ in phraseology to the extent observable in sections 1136 and 1139 that it is possible that the legislature intended the two sections to apply to different classes of persons, or to cover different grades of the same offense. We submit further, that there can be no departure from the canons of strict construction that are always rigorously adhered to in the consideration of purely statutory crimes like embezzlement; and in the application of the statute law every doubt as to its applicability to the particular instance under consideration, should be resolved favorably to the accused. "Statutes concerning embezzlement define the classes of persons who may be guilty of the crime, and as they are penal statutes, they cannot be extended by construction to persons not within their terms, though they may be within the obvious spirit and intent of the enactments." 2 Bishop's Criminal Law, sec. 331. See, also, comprehensive note to *Calkins* v. *State,* 98 Am. Dec. 126.

At the risk of appearing cruel and over-persistent, we cannot refrain from taking a parting shot at this verbal

monstrosity, the indicting sentence. In a Massachusetts case, 6 Gray, 489, it was held with reference to an indictment that, "if a statute, though unnecessarily recited, is so misrecited as to make it senseless, as where it is referred to as an act entitled an act concerning the manufacture and sale of 'spirituous and intoxicating' liquors, the indictment will be bad." We submit that the misspelling that rendered the Massachusetts indictment bad, is less of a riddle and can be reduced to intelligibility with much less effort than is encountered in this Mississippi crime against the King's English.

That we are not unreasonable or captious in our objections, appears from the remarks of SCOTT, J., in *State v. Mitchell,* 25 Mo. 421, wherein he delivered himself thus: "When a man is called upon to defend himself against the charge of having violated the law, it is not unreasonable that he should require the accusation against him to be in sensible language."

*S. L. Dodd,* for appellee.

The court will observe that it is manifestly plain that the appellee is proceeded against as a bailee of the General Film Company, a corporation duly chartered as such.

Section 1136 of the Code of 1906, above set out, expressly omits bailees of a corporation, but only says director, agent, clerk, servant, or officer of any incorporated company.

The authority to proceed against a bailee for embezzlement is only when it is a bailee of a private person, and not of a corporation, and this is so manifestly plain and palpably true that the judicial mind cannot fail to see at once the limitations imposed by the statute in proceedings against a party charged with embezzlement.

To hold that the bailee of a corporation can be proceeded against for embezzlement, would be for the court to engraft on the section what it does not contain, and would add to it what the legislature did not do when section 1136 of the Code of 1906 became the law.

The state having elected in the indictment to proceed against the appellee as a bailee, for an incorporated company cannot now proceed against him as a bailee of a private person.

The effort of the appellant to seek shelter under section 1139 of the Code of 1906 is equally abortive, as the allegations in the indictment find no application to that section because that section has reference only, not to a balance for a corporation, but if any person shall fraudulently appropriate personal property or money which had been delivered to him on deposit, or to be carried or repaired, or any other contract or trust by which he was bound to deliver or return the thing, on conviction, etc.

Now, how counsel for the state can make that section apply to the indictment before the court, is beyond our comprehension.

Certain it is that the indictment does not charge anywhere that the property in controversy alleged to have been embezzled had been delivered to him on deposit, or was to be carried or repaired nor is there anything in that section, we respectfully submit to the court, that has any reference whatever, to the character and kind of indictment that the court is now called upon to interpret or construe.

The court has before it the record expressly charging the defendant as having without the assent of the corporation disposed of the property which has been entrusted to him by virtue of said contract of bailment and he is expressly indicted as a bailee of a corporation, specifically, and definitely charged as such, and in doing so the indictment should have pointed out certain the relation which the defendant bore to the owner of the property, which we submit has not been done in this instance. We refer the court to the following well considered cases: *People* v. *Cohen,* 8 Cal. 42; *People* v. *Peterson,* 9 Cal. 313; *People* v. *Poggi,* 19 Cal. 600; *Carter* v. *State,* 53 Ga. 326; *State* v. *Griffith,* 45 Kan. 142.

In the last case above cited Justice JOHNSON said, among other things: ''The mere allegation that he was a bailee is too general and indefinite, and does not fairly inform the defendant of the nature and cause of the accusation made against him. The information should state who placed the property in the hands of the defendant, the purpose or use to which it was to be applied and the time within which this purpose was to be carried out, or the time within which the property was to be returned.

''The statute defining and punishing embezzlement, like other penal statutes, are strictly construed, and no one can be punished under them, however, grievous his wrong who is not fairly comprehended within their precise language.''

''It is not enough that he may come within their spirit and intent.'' 10 Am. & Eng. Ency. of Law, 997.

''A servant has been defined to be one employed in the service of another, who is under the immediate control of his master, and who is to carry out his master's behest under his implicit directions and usually with no option in the servant as to how or when the work shall be done.'' So the appellee was not a servant of the corporation.

''An agent signifies one employed in the service of another and who not only does for that other, but represents him and acts for him in his name and stead. It implies a delegated authority.''

''The word employee when it occurs, means one employed by another without reference to the nature or purpose of the employment.'' So the appellee was not an employee.

The above definitions may be found under the caption, Embezzlement, in 10 Am. & Eng. Ency. of Law, 997, 998.

''Bailees, including Common Carriers. Bailees as a general rule cannot be indicted for embezzlement as servants, or agents, for they are not servants and agents within the statutes.'' *Reed* v. *State,* 16 Tex. App. 586.

105 Miss. 34

"An agent is not a bailee." *State* v. *Meyers,* 68 'Mo. 266.

One or more of counsel for the appellant refer in their brief to the cases of *Breeland* v. *State,* 79 Miss. 527, and *Peck* v. *State,* 95 Miss. 240, and *Wilson* v. *State,* 80 Miss. 291, but after careful reading of said cases we fail to find anything that bears directly or indirectly on the case at bar.

In the case of *Richburger* v. *State,* 90 Miss. 806, cited in the brief of counsel for appellant, which was a case of embezzlement, the court uses this language:

"An objection to the indictment, most strenuously argued in this court, is predicated on the fact that it fails to show that the appellant in the language of the statute was a director, agent, clerk, servant, or officer of an incorporated company, the charge being that he was the cashier of the bank; but we are precluded, the objection not being jurisdictional in its nature, from deciding the point, not made in the court below, but presented for the first time in this court."

Nothing is said about a bailee of an incorporated company, no demurrer having been laid to the indictment in the trial court, and the very points contended for by the appellee were not raised in that case nor could the case in any manner be authority in this case, where the state was met at the very threshold with a demurrer, and the validity of the indictment, or rather its sufficiency, challenged by the appellee and whose contention was sustained by the trial court.

The attorney-general in his brief admits that bailment is not technically an agency, and in effect confesses our contention that section 1136 of the Code of 1906 has no application to cases of bailees of an incorporation; however, argues that said section is not susceptible of the interpretation, that a bailee of an incorporated company cannot, under the terms of this section, commit the crime of embezzlement by an appropriation of the property of the incorporation, and tries to argue that there is

no reason why the bailee should not be held criminally responsible for an embezzlement of the property of the corporation.

We answer him that the statute is to be strictly construed, and the right of the state to proceed against the appellee is measured by section 1136, and without that section, this indictment could not stand for a moment nor would any of the things therein named as crimes be deemed and held as such; and the law expressly omits "bailee of an incorporation," and with that omission in that section, this indictment fails.

We need not elaborate further, but will content ourselves, with the law as written in the Code defining the crime, which is not a common law offense, and to the well known legal maxim that the indictment should be drawn only on one section of the statute and where the averments leave it doubtful whether the offense defined in one section, or the dissimilar offense defined in another section, is charged, it will be quashed as bad for duplicity, as expressly held in *Commonwealth* v. *Pratt,* 37 Mass. 98; *State* v. *Messenter,* 58 N. H. 348; *State* v. *Barker,* 58 Idaho, 604; *State* v. *Palmer,* 32 La. Ann. 565.

COOK, J., delivered the opinion of the court.

Omitting the formal parts, the indictment in this case reads this way:

"That S. K. Journey, in said county on the second day of September, A. D. 1912, being the agent, servant, and employee and bailee of the General Film Company, a corporation, duly chartered and organized and doing business in the states of Louisiana and Mississippi, with its domicile at the city of New Orleans, Louisiana, and doing business under the firm name of the General Film Company, did then and there, by virtue of a contract of lease, rent and hire, made by and entered into by and between the General Film Company and the said S. K. Journey, whereby said S. K. Journey agreed to pay to said General Film Company one dollar each reel of films, as rent,

shipped to him, to be used by him not exceeding four days, and to be then returned by him to the said General Film Company at its office in the city of New Orleans, Louisiana, by means of which the said S. K. Journey got possession of one reel of films, of the personal property of the General Film Company, of the value of seventy-five dollars of the lawful money of the United States of America, said films to be used by him for four days and no longer, after their reception by him in the city of Kosciusko, Attala county, Mississippi; that by virtue of said contract of bailment the said S. K. Journey came into possession of one reel of films at Kosciusko, Mississippi, on, to-wit, the twenty-second day of February, 1912, which said reel of films was numbered 3480, and was made by Pathé, and was entitled "American Field Artillery and Blue Wong and the Violinist;" the same being the property of the said General Film Company, he having received said reel of films on account of the General Film Company, did then and there, on, to-wit, the day and year above stated, unlawfully, willfully, fraudulently, and feloniously embezzle, secrete, and convert to his own use said reel of films as aforesaid, without the assent and consent of the General Film Company, and which had been intrusted to him by virtue of said contract of bailment as aforesaid, and did then and there unlawfully, willfully, fraudulently, and feloniously take, steal, and carry away said reel of films, of the value of seventy-five dollars, of the personal property of the said General Film Company."

To this indictment the defendant demurred, and for grounds of demurrer assigned the following:

"First. Because said indictment charges no offense known to law.

"Second. Because said indictment charges 'a contract of lease, rent, and hire, made by and entered into by and between said General Film Company, and the said defendant,' but fails to state whether said contract was

oral or in writing, so as to put the defendant on inquiry or notice of what he is called upon to plead to.

"Third. Because said indictment does not inform the defendant of the nature and kind of contract claimed to have been made by the General Film Company with the defendant, or set out a copy of the same, either in words and figures, or make an exhibit of the same to the indictment, or copy the same in the presentment.

"Fourth. Because said indictment does not allege that any demand was ever made upon the defendant for the possession of said property alleged to have been embezzled, that was duly authorized to receive the same from the defendant, so as to put him in default.

"Fifth. Because said alleged contract of bailment charged in the indictment under which the defendant stands indicted is too vague, indefinite, uncertain as to what it contains as to put the defendant upon notice, so as to enable him to prepare his defense.

"Sixth. Because said indictment does not point out with precision as required by law the contract of lease, rent, and hire, alleged to have been made between the General Film Company and the defendant, so as to inform the defendant of the nature of the accusation, and the offense charged, as required by law, before he can be compelled to plead or answer to the same.

"Seventh. Because said indictment charges the defendant with having agreed to pay the General Film Company one dollar for each reel of films shipped to him by the General Film Company, to be used by him for four days and no longer, after their reception by him in the city of Kosciusko, Miss., but fails to point out with exactness what four days he had a right to use the same, or that any demand was ever made upon him for the same by the party authorized to receive the same.

"Eighth. Because said indictment charges said defendant with having received a reel of films, but fails to say that he was ever called upon by any party au-

thorized to make such demand or to receive the same from him, and that he refused to deliver the same on demand by such authorized party.

"Ninth. Because, if there was a contract of bailment as alleged in the indictment, or of rent and hire, made by the General Film Company and the defendant, upon a sufficient consideration, the same should be plainly stated in the indictment, so as to inform the defendant of the nature of the offense with which he stands charged.

"Tenth. Because said indictment is founded on section 1136 of the Code of 1906, and said section has no application whatever, and does not embrace within its provisions the relation of bailment to a corporation, but refers only to relation of bailment as between private persons. So far as incorporated companies are concerned, said section has reference only to agents, directors, clerks, and servants, and does not specify bailees, or refer with certainty and particularity to persons bearing that relation to incorporated companies."

The demurrer was sustained by the trial court, and the state appeals.

We are unable to discover anything wrong with this indictment, and we think none of the grounds assigned for demurrer is well taken.

We think it only necessary to refer to the tenth ground of demurrer. It is the contention of appellee that the words "any trustee or factor, carrier or bailee," in section 1136 in the Code of 1906, refer to trustees, factors, carriers, and bailees of private persons alone. We do not so construe the statute. It is our opinion that the language employed by the legislature refers to trustees, factors, carriers, or bailees of both artificial and natural persons.

Wherefore the judgment of the trial court is reversed, and the cause remanded.

*Reversed and remanded.*